IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN THE MATTER OF THE ARBITRATION
BETWEEN

| | | |
|---|---|---|
| AO TECHSNABEXPORT, | * | |
| Plaintiff, | * | |
| | * | |
| v. | | Civil Action No.  AW-08-1521 |
| | * | |
| GLOBE NUCLEAR SERVICES AND | | |
| SUPPLY, LIMITED | * | |
| Defendant. | * | |

******

**MEMORANDUM OPINION**

Plaintiff AO Techsnabexport ("Tenex") brings this action against Globe Nuclear Services and Supply, Limited ("GNSS") seeking a confirmation of the Final Arbitration Award ("Final Award") issued on June 11, 2007 in its favor against GNSS by the Arbitration Institute of the Stockholm Chamber of Commerce ("AISCC").  Currently pending is Tenex's Motion to Confirm the Final Arbitration Award and for Entry of Final Judgment, (Paper 30) and GNSS's Motion to Confirm the August 31, 2006, Partial Arbitration Award ("Partial Award") (Paper 39).  The Court has reviewed the entire record, as well as the pleadings and exhibits, with respect to the instant motions.  The issues have been fully briefed, and a hearing was held on June 23, 2009.

1

*See* Local Rule 105.6 (D. Md. 2008).  For the reasons stated more fully below, the Court will grant Tenex's Motion to Confirm the Final Arbitration Award and will deny GNSS's Motion to Confirm the August 31, 2006, Partial Award.

**Factual and Procedural Background**

This case involves international law, international treaties, the Russian federation, and a parallel criminal proceedings in both the United States and Russia. Tenex is a joint stock company organized under the laws of the Russian Federation.  The Ministry of Property Relations of the Russian Federation holds 100% of the shares of Tenex, and Tenex is on the list of companies owned by the Russian state that are not eligible for privatization.  Defendant GNSS is a company incorporated in the State of Delaware with its headquarters in Bethesda, Maryland, however, the principal officers and executives of GNSS are Russian nationals.   On or about January 31, 2000, GNSS and Tenex executed a contract regarding the sale of Natural Uranium Hexaflouride (the "GNSS-Tenex Contract"). This contract was an implementation contract arising out of the START I Treaty, an effort to reduce cold war era nuclear arms, between the U.S. and the Soviet Union.  The GNSS-Tenex Contract established a framework for purchases of uranium by GNSS from Tenex, and for almost three years, 2001, 2002, and 2003, the

parties performed as contemplated by the contract.   The GNSS-Tenex contract also provided that any disputes between the parties would be resolved through arbitration and the contract set the laws of Sweden as the choice of law for any disputes, and set Stockholm, Sweden as the place of arbitration.

In November 3, 2003, Tenex informed GNSS that it would no longer deliver uranium to GNSS as of January 1, 2004, because such deliveries were "inimical to the interests of the Russian Federation."[1] (Paper 43 Ex. 1.) GNSS responded and insisted that Tenex retract this statement, but Tenex refused. As a result, on or about November 20, 2003, GNSS filed an Arbitration Complaint with the AISCC. (*Id.*)   On June 11, 2004, Tenex filed its statement of defense. (*Id.*)   Three arbitrators presided over the arbitration process. Mr. Moeller of Finland was named the Chairman of the Arbitral Tribunal. GNSS appointed Mr. Danielsson of Stockholm Sweden as an arbitrator, and Tenex appointed Mr. Lebedev of Moscow as an arbitrator. On July 21, 2004, with the assistance of counsel, the parties adopted the rules that were to govern the arbitration process. (*Id.*)

Pursuant to a procedural order dated November 11, 2005, the arbitration was bifurcated with separate pleadings and hearings

---

[1] GNSS asserts that the deliveries became "inimical to the interests of the Russian Federation" because the price of uranium spiked in 2003, and since TENEX was bound to sell uranium to GNSS at the prices established in 2000, TENEX was losing a great deal of money.

on the issues of damages to take place following the Partial Award on liability issues.   In the same procedural order, the tribunal was "later to decide whether and, if so, to what extent new evidence, which might come up in the then ongoing criminal investigations in Russia and the United States, would be allowed." (*Id.*)   If the tribunal were to decide that such new evidence should be allowed, an oral hearing on the validity of the GNSS-Tenex contract would be held on December 18-20, 2006. (*Id.*)

The Tribunal conducted oral hearings (the "Spring Hearings") on March 28-29, 2006, and April 1-5, 2006, in Stockholm, Sweden, regarding the issue of breach by Tenex of the GNSS-Tenex contract. As a result, on August 31, 2006, the Arbitral Tribunal found Tenex liable for breach of contract and issued a "Partial Award" in favor GNSS.   In accordance with the procedural order of November 11, 2005, the Partial Award only addressed the issue of liability, and did not reach the issue of damages, but a subsequent hearing on damages was scheduled for September 2006.

On September 25-27, 2006, the Tribunal conducted a hearing on damages in Stockholm, Sweden.   At the conclusion of the hearing, the Tribunal deferred its ruling on damages until it held a hearing on the validity of the GNSS-Tenex Contract.   On

4

December 1, 2006, Tenex briefed the Tribunal on the invalidity of the GNSS-Tenex contract and the lack of standing. GNSS opposed Tenex's brief and argued that the exhibits filed by Tenex should not be considered because the "evidence [was] irrelevant, old and untimely." (Paper 43 Ex. 2.)  The Tribunal disagreed and scheduled a hearing for December 18-20, 2006.  In so doing, the tribunal stated that after the December 18-20, 2006, hearing, the record would be closed and a final award would be issued.

At the December 18-20 hearings, Tenex argued that the GNSS-Tenex contract was invalid or unenforceable.  As support for their position, Tenex introduced evidence that was uncovered as a result of the criminal proceedings in the United States and in Russia.[2]

On June 11, 2007, the arbitral tribunal issued a Final

---

[2] The following facts were extracted from the criminal proceedings. When the GNSS-TENEX contract was signed, Dr. Dmitrievich Pismenny, a member of the Russian Academy of Science, controlled GNSS.  An organized criminal group, including Dr. Pismenny, through a company called TKST or Texi, Inc., obtained 62% of GNSS shares and paid for 49% of those shares with international assistance funds.  In a case in the Western District of Pennsylvania, the United States asserted that those funds had been stolen from the U.S.  Dr. Pismenny and others, made it seem that TKST was a company ultimately owned by the Russian state through the state-owned organization named TRINITI.  Dr. Pismenny and his cohorts made it seem that TRINITI was acting in TENEX's interests, when in fact it was not.

In the criminal proceedings it was alleged that Dr. Pismenny's group fraudulently acquired 49% of the GNSS shares from some sort of bankruptcy estate. TENEX was ultimately defrauded because had TENEX known that there was a secret arrangement between Dr. Pismenny and others, and that TKST was not acting in TENEX's interest, TENEX's would never have agreed to the sale of the GNSS shares not would TENEX have contracted with GNSS.

Award in favor of Tenex.  As a result of the criminal enterprise between Dr. Pismenny and others, the tribunal found that:

> 1)  TKST/Texi, Inc could not be considered legitimate owners of the shares in GNSS. The tribunal stated that they did not have the authority to appoint executive bodies of GNSS and/or other representatives of GNSS;

> 2)  The arbitration proceedings were initiated by unauthorized representatives of GNSS and therefore the proceedings should be terminated;

> 3)  GNSS's counsel did not have the requisite authority to represent GNSS in the arbitration—and thus GNSS lack[ed] standing in the arbitration.

> 4)  GNSS fraudulently induced TENEX to enter into the GNSS-TENEX contract – because Pismenny and the others lead TENEX to believe that TKST, which owned 62% of GNSS shares, was a company ultimately owned by the stated and controlled by Minatom (Ministry for Atomic Energy of the Russian Federation) and that TKST was acting in the interest of TENEX.  Dr. Pismenny's group concealed the fact that there was a secret arrangement that TKST would act in the interests of Omeka and Texi, two companies controlled by the group;

> 5)  The GNSS-TENEX Contract [was] invalid or unenforceable as a matter of Swedish law and international public policy.

(*Id.*)

The Tribunal dismissed all of GNSS's claims and awarded Tenex USD 5,000,000.00 and EUR 800,000.00 with interest, as compensation for its legal representation and other expenses for

presenting its case to the arbitral tribunal. (*Id.*) Tenex now seeks entry of a Final Order and Judgment in its favor pursuant to Sections 9 and 13, Title 9 of the United States Code. GNSS filed an appeal with the SVEA Court of Appeals in Stockholm, an intermediary court of appeals.  As of the date of the hearing before this Court, the appeal before the SVEA Court of Appeals was still pending, and the parties were scheduled to appear before the SVEA Court in October 2009.  The Court inquired whether the parties requested for the Court to stay the instant case pending the outcome of the hearing before the SVEA Court. The parties indicated that they did not file such a request.

**Standard of Review**

Judicial Review of an arbitration award in federal court is "substantially circumscribed."  *Three S Delaware , Inc. v. Dataquick Information Systems, Inc.*, 492 F.2d 520, 527(4th Cir. 2007).  In fact a district court's authority to review an arbitration decision "is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all . . . ." *Id*. Arbitration awards are governed by the Federal Arbitration Act, ("FAA") and when an arbitration award is issued by a foreign authority, its confirmation is governed by the FAA under the framework set forth in the Convention on the Recognition and

7

Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq*. ("Convention" or "New York Convention"). Under the New York Convention, a court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specific in the said Convention." 9 U.S.C. § 207. Article V of the Convention states, in relevant part:

> 1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>> (a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to

> arbitration may be recognized and
> enforced; or
> (d) The composition of the arbitral
> authority or the arbitral procedure
> was not in accordance with the
> agreement of the parties, or, failing
> such agreement, was not in
> accordance with the law of the country
> where the arbitration took place; or
> (e) The award has not yet become
> binding on the parties, or has been
> set aside or suspended by a competent
> authority of the country in which, or
> under the law of which, that award
> was made.
> 2. Recognition and enforcement of an
> arbitral award may also be refused if the
> competent authority in the country where
> recognition and enforcement is sought finds
> that:
>> (a) The subject matter of the
>> difference is not capable of
>> settlement by arbitration under the law
>> of that country; or
>> (b) The recognition or enforcement of
>> the award would be contrary to the
>> public policy of that country.

Convention art. V(1)(a)-(2)(b).

The Convention manifests a general pro-enforcement bias. *See*
*Parsons & Whitemore Overseas Co. v. Societe Generale de*
*L'Industrie du Papier*, 508 F.2d 969, 973 (2d Cir. 1974). The
party opposing confirmation bears the heavy burden of proving
the applicability of the Convention's enumerated defenses. *See*
*Ministry of Defense v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir.
1992).

**Analysis**

    A. *Confirmation of Partial Award*

    GNSS argues that the Court must confirm the August 31, 2006, award because it was made in accordance with the terms and provisions of the parties' agreement and is, in all respects, proper.  It argues that the August 31, 2006, award is final and binding with regard to all issues addressed in that award, and therefore the Court should confirm the award, and pursuant to 9 U.S.C. § 207 the Court should enter an order confirming the Partial Award judgment for GNSS.  In response, Tenex contends that the motion to confirm the Partial Award should be seen for what it is -- a litigation tactic. The reality is that the Partial and Final Awards dealt with completely different issues. Tenex maintains that the Partial Award addressed the following: (i) whether a provision entitling Tenex to sell uranium to GNSS only as long as Tenex owned at least 25% of GNSS, had become a part of the Contract; and (ii) Tenex's objection that the breach of the transparency provision in the HEU-agreement permitted Tenex to unilaterally terminate the contract. On the other hand, Tenex avers that the Final Award addressed, whether it would be inequitable for GNSS to invoke the Contract in light of the fact that GNSS was aware of a fraudulent scheme surrounding the execution of the Contract. In contrast to the Final Award, the

Partial Award does not address the validity of the GNSS-Tenex Contract.   Moreover, Tenex argues that GNSS's delay tactic is clear given the fact that GNSS made no efforts to confirm the Partial Award for two years after it was issued.

The Court agrees with Tenex, and declines to confirm the Partial Award.   The Partial Award was issued almost a year before the Final Award, and almost a year before that, the Tribunal issued a procedural order in which they stated that the issues of liability and damages were bifurcated and if deemed necessary they would hear evidence regarding the validity of the GNSS-TENEX contract after the hearing on the partial award, and that is just what the tribunal did.   Moreover, although the hearing on damages was held, the tribunal never awarded any damages to GNSS.   They reserved issuing any award until they heard arguments regarding the validity of the contract.   Also of significant importance, in the Final Award, the tribunal clearly stated that (1) GNSS claims were dismissed in their entirety; (2) GNSS lacked standing to participate in the arbitration process; and (3) the GNSS-TENEX contract was invalid or unenforceable. (Paper 43 Ex. 2.) GNSS wants the Court to believe that despite these clear pronouncements by the Arbitration Tribunal, it is somehow nevertheless entitled to the Partial Award.   GNSS points to no case law to support this proposition

and instead makes a convoluted argument that because the Final Award states, "this Final Award presupposes a detailed knowledge of the Partial Award on Liability Issues and the two Awards should be read together," that means they are entitled to have the Partial Award confirmed. (*Id.*) GNSS also has inundated the Court with documents and exhibit in an attempt to have the Court conduct a somewhat *de novo* review of the arbitration process that was held. It asks the Court to review much of the evidence and testimony that was put before the arbitration tribunal and find that there were procedural irregularities during the process, and even though all parties were represented by counsel throughout, the process was somehow unfair and should be set aside.

As the Court stated from the outset, judicial review of an arbitration award in federal court is "substantially circumscribed." *Three S Delaware, Inc.*, 492 F.2d at 527. The confirmation process does not give the opposing party another bite at the apple to re-litigate all the issues that were properly presented to and decided by the arbitral tribunal. And even if the Court were inclined to confirm the Partial Award, which it is not, such as confirmation would not entitled GNSS to any monetary damages because the Tribunal never awarded any. For

these reasons, GNSS's Motion to Confirm the August 31, 2006, Partial Award is denied.

   *B. Confirmation of the Final Award*

   The Final Award is governed by the FAA. The FAA provides that upon the application of a party to an arbitration award made pursuant to the New York Convention, a district court shall enter "an order confirming the award," unless the court "finds one of the [seven] grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . Convention." 9 U.S.C. § 207.   The public policy in favor of international arbitration is strong, thus, in opposing the award, GNSS faces a high burden.

   GNSS raised the following defenses under the Convention in their opposition to Tenex's Motion to Confirm the Final Arbitration Award:[3]

> 1. Tenex Has Failed to Comply with the Jurisdictional Requirements for Recognition of the Final Award;
> 2. A conflict exists between the Partial Award and the Final Award that renders the Final Award Unenforceable pursuant to Articles V(1)(a) and V(1)(c) and V(2)(b) of the New York Convention;
> 3. The Final Award was based on arguments not submitted by the parties, thereby

---

[3] In its Answer, as an Affirmative Defense, GNSS claimed that it was precluded from meaningfully presenting its case and thus the Court should decline to confirm the Final Arbitration Award.  Although GNSS cites Article V(1)(B) in support of this defense, in substance the defense is not one of the enumerated defenses under the Convention, and accordingly the Court will not address it.

13

       rendering the Final Award unenforceable
       pursuant to Art. V(1)(c);

4. The Final Award was issued to protect the
   interest of a third party which was not
   subject to the arbitration agreement,
   thereby rendering the Final Award
   unenforceable pursuant to Articles V(1)(a)
   and (c);

5. The Final Award relies on witness
   statements submitted in violation of the
   parties' agreed arbitration procedures,
   thereby rendering the Final Award
   unenforceable pursuant to Article V(1)(d);
   and;

6. The Arbitration tribunal improperly
   imported into the arbitration a sham
   criminal prosecution from the Russian
   Federation, thereby rendering the Final
   Award unenforceable as contrary to the
   public policy of the United States
   pursuant to Article V(2)(b).

(Paper 52 at 17.)

The Court will address each of GNSS's defenses in turn.

    GNSS first argues that Tenex has failed to comply with the jurisdictional requirements for recognition of the Final Award, because Tenex had not, at the time GNSS filed its response, furnish the Court with a "duly certified" copy of the Final Award, and therefore the Court must decline to confirm the Final Arbitration Award. Art IV(1) of the Convention states that "to obtain the recognition and enforcement [of a foreign arbitration award], the party applying for the recognition and enforcement shall, at the time of application supply: (a) the duly

authenticated original award or a duly certified copy thereof;
(b) the original agreement . . . or a duly certified copy
thereof.   Failure to comply with the requirements of Art. IV(1)
constitutes grounds for refusal or deferral of the request.   *See
Czarina, LLC v. W.F. Poe Syndicate*, 358 F.3d 1286, 1292 (11th
Cir. 2004).   In its Reply to the Motion to Confirm Final
Arbitration Award, Tenex supplied the Court with a certified
copy of the Final Arbitration Award.   Therefore, the Court finds
that Tenex has satisfied the jurisdictional requirements of the
Convention, and will not refuse to confirm the award on this
basis.

Second, GNSS contends that a conflict exists between the
Partial Award and the Final Award that renders the Final Award
unenforceable pursuant to Articles V(1)(a) and V(1)(c) and
V(2)(b) of the Convention. GNSS makes several different points
to support this proposition.   GNSS bases its position upon the
argument that the Final Award is to be "read together" with the
Partial Award, and that the Partial Award must be confirmed
before confirmation of the Final Award can be considered.
Specifically, GNSS points to the language in the introduction of
the Final Award that states, "this Final Award presupposes a
detailed knowledge of the Partial Award on Liability Issues and
the two Awards should be read together." (Paper 43 Ex. 2.) Given

15

this supposed conflict, GNSS then argues that confirming the Final Award would violate the doctrines of *res judicata* and collateral estoppel.

While GNSS's argument is creative, it still must fail. The Court fully comprehends the process this arbitration proceeding took, and what the tribunal sought to accomplish when it rendered the Partial Award and the Final Award. The two awards are different. The Partial Award found that Tenex breached its obligations under the GNSS-Tenex contract and was liable for that breach. The Final Award addressed unethical conduct and fraud which the tribunal believed, vitiated or caused the contract to be invalid or unenforceable.

Moreover, because the Court has already addressed GNSS's Motion to Confirm the Partial Award, and because the Court does not find any conflict or inconsistency between the Partial Award and the Final Award, and the doctrines of *res judicata* and collateral estoppel are inapplicable.

Next, GNSS contends that the Final Award was based on arguments not submitted by the parties, thereby rendering the Final Award unenforceable pursuant to Art. V(1)(c). GNSS advances two arguments on this point. GNSS first argues that the arbitrators mandate was defined by the grounds invoked by the parties, and the arbitration agreement itself, and once the

tribunal decided the issues placed before it by the parties, its mandate was extinguished, and the tribunal became *functus officio*, or without authority, to readdress those issues.  GNSS maintains that, in the Final Award, the tribunal addressed the same issues that were addressed in the Partial Award, and thus the Final Award was issued after the tribunal's mandate was extinguished.

While Tenex agrees that the doctrine of *functus officio* has some application under Swedish law, it maintains that its application is analogous to the doctrines of *res judicata* and collateral estoppel.  With that in mind, Tenex argues, the issues addressed under the Partial Award were wholly different than those addressed in the Final Award, because the Final Arbitration Award dealt with the validity of the GNSS-Tenex contract, and not the breach of the contract, as the Partial Award did, and therefore neither *res judicata* or collateral estoppel apply.  Tenex also contends that the procedural history of the arbitration proceedings makes clear what issues were properly before the Tribunal.  When Tenex learned of the pending criminal charges against Mr. Adamov, Tenex raised the issue with the Tribunal and reserved the right to bring forth any evidence relevant to the arbitration proceedings made available to it by the criminal proceedings.  Because the Tribunal granted Tenex's

request, the issue of invalidity was properly before the tribunal when Tenex raised it at a later date.

The Court finds that the tri-furcated order of the arbitration proceedings was clearly set from the beginning. The Tribunal indicate that it would address the issue of breach first, any damages as a result of the breach, second, and if necessary, any arguments regarding the invalidity of the GNSS-Tenex contract based on evidence generated by the parallel criminal proceedings. And the by agreeing to the procedural order, GNSS cannot now argue that that when the Tribunal issued the Partial Award, it was without the authority to address the validity of the contract. From the outset, the parties placed a number of issues on the table for the Tribunal to address, and the Tribunal established a procedural order in which to address all the issues. It is true that the procedural process by which the arbitration was conducted was somewhat unusual, but that was due to the unique facts and surrounding circumstances underlying the parties' dispute. Thus, the Court does not find that the Final Award was unenforceable pursuant to Art. V(1)(c).

Secondly, GNSS maintains that that the Final Award is based on grounds not invoked by Tenex because the Tribunal specifically stated that, "the claim [made by Tenex] that this contract was signed as part of a fraudulent scheme doesn't work

18

under Swedish Law, because they're all on the inside of the so-called scheme." (Id.) This statement was made by the Tribunal after Tenex argued that the contract was invalid under "both" Section 30 and 33 the Swedish Contract Act ("SCA"). But then GNSS contends that the Tribunal contradicted itself because it then considered Tenex's argument under section 33, and took a broader view of the invalidity question than was put to it. GNSS argues that the grounds Tenex invoked for applying Section 33 were not the same as the grounds the Tribunal invoked for applying Section 33.

The Court does not find any impropriety or irregularity on the part of the Tribunal justifying avoidance of the award. Tenex raised both section 30 and 33 as a basis for arguing that the GNSS-Tenex contract should be declared invalid and unenforceable. Perhaps the explanation given by the Tribunal regarding Section 33 did not mirror the argument presented by Tenex however, the Court does not find that the Tribunal contrived its own independent basis for invalidating the contract. The Tribunal reasoning was based on an argument presented by Tenex.

As a fourth basis to support its argument that the Court should not confirm the Final Award, GNSS argues that the Final Award was issued to protect the interest of a third party which

was not subject to the arbitration agreement, thereby rendering the Final Award unenforceable pursuant to Articles V(1)(a) and (c). In particular, GNSS argues that the Tribunal's found that it would be inequitable to enforce the GNSS-Tenex contract because "other persons" in Tenex and Minatom were unaware that Tenex did not control GNSS. (Paper 43 at 35) This conclusion, GNSS argues, exceeds that Tribunal's mandate, because it was "based on the interests of the government of the Russian Federation," which was neither a party to the GNSS-Tenex contract nor a participant in the arbitration proceedings, and therefore it constitutes a decision on a matter beyond the scope of the parties' submission to the Arbitration Tribunal. (*Id.*)

In substance, the Court finds that this argument is not among the seven defenses enumerated in the Convention, and even if it were, the argument still fails. Nowhere in the Final Award did the Tribunal address the interests of any party beyond Tenex and GNSS, and in finding in favor of Tenex, the Tribunal reached its conclusion based on what "Tenex believed," not on what the Russian Federation or any other entity believed. (Paper 43 Ex. 2) Therefore, this fourth basis must also fail.

As a fifth basis to oppose the confirmation of the Final Award, GNSS contends that The Final Award relies on witness statements submitted in violation of the parties' agreed

arbitration procedures, thereby rendering the Final Award unenforceable pursuant to Article V(1)(d). GNSS argues that at the December 2006 hearing, Tenex submitted, over its objections, written statements of individuals who were not subject to cross-examination. GNSS states that the tribunal improperly admitted these statements into evidence and then relied on these improper statements in reaching its decision on the Final Award. In its briefs and at the hearing, GNSS argued that this was improper because the rules the parties adopted prior to the commencement of the arbitral proceeding required that "any person submitting a 'written statement' to the Tribunal must 'appear to testify and subject itself to oral examination by the party calling the witness, the other party and the Tribunal." (Paper 43 at 37.)

At the hearing, the Court inquired as to whether these alleged violations were brought to the attention of the Tribunal. In response, counsel for GNSS informed the Court that it did not raise the issue, and when asked why not, counsel for GNSS stated, "because we generally objected to the entire proceeding and all of their evidence and all of their exhibits, which included witness statements . . . ." (Tran. at 73.) GNSS never made any specific objection to the witness statements. Thereafter, GNSS then went ahead with the hearing.

The Court finds that it does appear that there was a violation of procedure with respect to witness statements that were considered and not admitted in accordance with evidentiary rules requiring cross-examination. But, the Court is still constrained to rule against GNSS on this issue because the GNSS insisted on going forward with the hearing, never requested an adjournment or continuance in order to cross-examine the witnesses. Thus, the Court finds that this constituted a clear waiver on the part of GNSS, and GNSS cannot now assert what they failed to raise before the tribunal.

Finally, GNSS contends that The Arbitration tribunal improperly imported into the arbitration a sham criminal prosecution from the Russian Federation, thereby rendering the Final Award unenforceable as contrary to the public policy of the United States pursuant to Article V(2)(b). GNSS aggregates all of its previous arguments and asks the Court to find that the Final Award is contrary to the "rule of law" and thus also contrary to the public policy of the United States. (Tr. at 81.) GNSS references the Tribunal's consideration of facts extracted from the parallel criminal proceedings at length as a basis for its argument. It contends that the Tribunal improperly credited conclusions of Russian prosecutors, and "issued a Final Award on contractual liability in favor of Tenex – precisely the opposite

22

of its liability finding in favor of GNSS in the Partial Award."
(Paper 43 at 48.) GNSS also argues that the Tribunal "sanctioned
. . . [the] gather[ing] [of evidence for the purpose of using it
is in the commercial arbitration." (Tr. at 82.)

Again, the Court disagrees with GNSS's account of what the
Tribunal found at each stage of the process.  Furthermore, at
the hearing, when asked what proof he had to support his
contention about documents being intentionally gathered for the
purpose of subverting the commercial arbitration, counsel for
GNSS conceded, "we do not have documentation." (*Id.*)

## Conclusion

Perhaps GNSS's public policy is better understood as a lack
of due process argument, whereby GNSS cannot point to anything
specific but yet wants the Court to believe that the arbitration
proceeding was somehow fundamentally unfair.  The Court
understands this argument, given the complexity of the facts and
circumstances surrounding the GNSS-Tenex contract dispute.  But
the Court is not persuaded that the process was in anyway
fundamentally unfair.  Each party chose an arbitrator to sit on
the tribunal.  Each party, with the assistance of counsel,
agreed to the procedure by which the arbitration proceeding
would be governed.  Each party had the opportunity to be heard
by the Tribunal.  While no hearing is ever perfect or free from

any irregularities, the Court finds that nothing in the record suggests that GNSS did not get a fair hearing and have an opportunity to make a meaningful presentation of its case. Accordingly, the Court will grant the Motion to Confirm the Final Arbitration Award, and will deny the Motion to Confirm the Partial Award.


__August 28, 2009___            _____/s/_____
Date                                 Alexander Williams, Jr.
                                    United States District Judge